## HARTFORD ACCIDENT & INDEMNITY CO v KENNY, Recr

Ohio Appeals, 5th Dist, Stark Co

Decided Oct 20, 1932

Lynch, Day, Pontius & Lynch, Canton, for plaintiff in error.

William B. Quinn, Canton, and Sherwood Ake for defendant in error.

SHERICK, PJ.

The result of the controversy was a judgment in favor of the receiver, from which judgment the indemnity company prosecutes error to this court, the chief grounds of error being: First, that the court below improperly overruled the motions of the indemnity company for a directed verdict; second, that it permitted evidence of waiver of conditions precedent to go to the jury when performance was pleaded and waiver was not pleaded; and, third, that the court erred in its general charge when instructing the jury concerning waiver. Decision of these claimed errors is dispositive of the questions presented, as the other claimed errors, if such they be, are not prejudicially so.

By reason of certain claims relative to the pleadings, it becomes necessary to first examine the allegations thereof, in conjunction with certain terms and conditions of the bond. The clause of the bond drawn in question recites: "Upon the discovery by the Employer of any loss covered here-

under, this bond shall automatically be terminated as to any acts committed by the employee causing the loss, subsequent to the date of discovery. The Employer shall, within ten (10) days after becoming aware of such loss, give written notice thereof to the Surety at its home office in the city of Hartford, Connecticut; and affirmative proof of loss, under oath, giving the name, address and office or position occupied by such employee, together with full particulars of such loss, shall be filed with the Surety at its home office in the city of Hartford, Connecticut, within three (3) months after such discovery."

The plaintiff devotes one paragraph of the petition to the matter of performance, which is couched in the following language: "Plaintiff says that upon the discovery of the losses hereinbefore set forth, he gave notice to the defendant company within the time limit, and as required by the terms of said surety bond, of the losses sustained."

It will be noted that the phraseology of this averment is not in the general words of the statute. §11339, GC. It does not recite "that the party duly performed all the conditions on his part." Construed strictly the averment says that it gave notice of the losses sustained within the time limit. It is not averred that the insured or the plaintiff furnished the indemnity company with affirmative proof of loss within three months after such discovery of losses, as conditioned by the terms of the bond previously quoted.

To this petition the indemnity company answered, and after certain admissions it specifically denied that Whitson padded the pay roll, or embezzled or converted to his own use certain merchandise without the knowledge of the Zollars company, but avers the fact to be that he owes the value of this merchandise to it as a valid legal charge for which the indemnity company is not liable under the bond. Then follows a general denial, and thereafter it is pleaded that defendant has not received of the plaintiff satisfactory proof of any direct pecuniary loss caused his employer by Whitson within three months after the discovery thereof, as required by the bond.

The allegations of the answer are denied by the reply.

It is now claimed by the plaintiff that the general denial part of the defendant company's answer does not raise any issue as to a compliance with the provisions for notice, because the provisions of §11314, GC, provide what the answer shall contain, "and that where both general and specific denials

are made the general denial is limited to those matters specifically denied." The part quoted is taken from the receiver's brief.

It is apparent that the answer specially denies the two claims of dishonesty, and generally denies a third claim of forgery, abandoned at the trial, and the allegation of performance which plaintiff specially averred; but it does so in general language by virtue of §11339, GC. The latter part of this section becomes of much importance. It reads as follows: "If such allegation be controverted, the party pleading must establish, on the trial, the facts showing such performance."

The indemnity company, under §11314 GC, could have controverted this allegation by a special denial had it chosen to do so, but it did not so choose. Had it elected to specially deny this allegation in some particle and then to have generally denied the issue, we could then perceive the logic of the receiver's claim.

Now §11314 GC says that "the answer shall contain: A general or specific denial of each material allegation of the petition controverted by the defendant." The answer in this case simply does what the statute says must be done; that is, each material averment must be controverted either generally or specifically. It rather seems to us that the plaintiff receiver would take advantage of the first portion of §11339, GC, in his favor, but deny the obligation imposed upon him by the last part thereof. It is therefore our opinion that the question of the ten-day notice is an issue in this case, and having so determined, we now proceed to further comment on the plaintiff's proof made at trial, to see if the chief ground of error is well taken.

First, considering the matter of a padded pay roll, we learn that counsel for the receiver—who had also been counsel for the insured up to the time of the receiver's appointment on January 28, 1930—had been notified some time in December, 1929, by the insured's pay roll bookkeeper of the manager's padding of the pay roll, and that thereafter, in the same month, at a directors' meeting of the insured, or in the presence of its officers, Whitson was questioned, and that about Christmas time officers and employees of the insured appeared before the grand jury of Stark County and procured Whitson's indictment on December 31, 1932, for embezzlement of the insured's moneys in padding the pay rolls. The amount charged in the indictment is within a few dollars of the amount sued for in the pay roll padding feature. It is therefore

clear that the insured company, through its attorney, its directors and its officers, had full knowledge of its manager's wrongdoing concerning the pay roll and the substantial amount of its loss by reason thereof.

In the matter of the claim for merchandise fraudulently obtained by the insured's manager, we are first drawn to the testimony of Mr. Levy, an attorney of Cleveland, employed by the officers of the insured, who came to Canton during the month of December, 1929. From his testimony it appears that he then secured from the insured certain invoices, checks, bills of lading, and correspondence relating to the merchandise herein in question; that these were submitted to a United States commissioner and that the insured's manager was bound over to the federal grand jury on a charge of using the mails to defraud; that all of these original papers were taken to Cleveland and delivered to a federal inspector, this all transpiring during the month of December, 1929.

Now, these papers, at least the major part of them, were lost, and this case is made on these papers that Levy obtained, and it is a significant and unescapable fact that this feature of the case is built on these merchandise deals which came into Levy's hands and that no other fraudulent merchandise deals were thereafter ascertained. From these facts and the action of the commissioner in binding over the manager on a serious criminal charge, it is evident that the insured company, through its attorney, its officers and directors, had knowledge not only of the loss it sustained by the manager's misconduct, but also the extent thereof. Counsel for the receiver says in oral argument that the amount was in doubt, and hence an accurate proof of loss could not be ascertained, for, as he says, the insured or the plaintiff might mitigate the loss by procuring an acceptance back of the merchandise by the sellers; that is, the extent of the loss was known, but it might be lessened. The fact is, no new or other merchandise conversions are now sued for.

We therefore must recognize the fact that the insured "became aware of such loss" not later than December 31, 1929, and that the receiver, if such is material, knew thereof soon after his appointment. We have read the complete record in this case and examined all exhibits, and we find no iota of proof on the part of the receiver that he or the Zollars Company ever gave to the indemnity company any notice within ten days after it became aware of the loss.

Defendant's Exhibit 1, a letter from the receiver's attorney to the agent of the indemnity company, bears out our conclusion. The letter is dated December 17, 1930. It recites in part: "I am enclosing a mimeographed copy of the testimony taken at a directors' meeting of Klein-Heffelman-Zollars, Inc., shortly after the pay roll padding had been discovered."

Now, it is contended that Paintiff's Exhibit 1 is not only a full compliance with the ten-day notice requirement, but also fully serves as the ninety-day requirement for an "affirmative proof of loss with full particulars." This instrument bears date of execution as of March 12, 1930, and is in the nature of an itemized account. It is sworn to, as a claim presented to an estate usually is. It does not contain or have attached to it any affirmative proof, as we understand the term, that would lead a reasonable person to believe the claim a true claim. It is simply a declaration under oath that so much is due the insured by reason of the embezzlement of the insured's assets by its manager.

The Supreme Court of Massachusetts, in the case of Fitchburg Sav. Bank v Mass. Bonding & Ins. Co., 274 Mass., 135, 174 NE, 324, 73 A.L.R., 274, adopts the reason of the New York courts in defining what is understood by "affirmative proof of loss with full particulars." It is there said: " 'A mere notice cannot supply the place of, or dispense with, the more formal proof provided for in the policy. The two are entirely distinct in their character, and are mentioned as two distinct acts to be performed by one who claims the benefit of the insurance. * * * Proof, as that term is used, means something more than the unverified declaration of the party in interest, whether formal or informal. * * * Else why require 'proof' in addition to 'notice.' 'Proof,' as in addition to notice, must mean evidence in some form, such form as is usual and customary in such cases, or as is recognized by law, and is calculated to convince or persuade the mind of the truth of the fact alleged. * * * Proof is frequently used as the synonym of 'evidence,' * * * and it was probably so used in this instance. The condition can only be performed by furnishing evidence in some form of the truth of the fact stated in the notice, and upon which the right of action depends. It need not be that full, clear and explicit proof, which would be required upon the trial of an issue upon the question, but it must be such reasonable evidence as the party can command at the time, to give assurance that the event has happened, upon which the liability of

the insurer's depends. * * * The purpose of the condition is that the insurer may be able intelligently to form some estimate of his rights and liabilities before he is obliged to pay, and some proof must be exhibited'."

We believe that the interpretation placed upon the phrase by these two courts is the proper construction to be placed thereon, and in so holding we make remark that Plaintiff's Exhibit 1 is sufficient as a matter of notice had it been furnished within the ten-day period "after becoming aware of such loss," but it is not sufficient as "affirmative proof of loss * * * with full particulars" as required by the bond contract.

As recognized in **Kornhauser, Recr., v Surety Co., 114 Oh St, 24, 150 NE, 921,** giving notice is a condition precedent, as is also the furnishing of affirmative proof of loss with full particulars. We are unable to see as insisted by the receiver, that **Wolinsky, Exrx., v National Casualty Co., 124 Oh St, 216, 177 NE, 588,** in any way changes the rule to be applied in this case. This latter case holds that time begins to run, not from the date of loss, but from the date of discovering its extent. In that case the court held there was a practical compliance with the condition within time of discovery of the extent of loss. In the case before us the extent of loss was discovered and known before the last of December, 1929. The first notice was some few days after March 12, 1930, and no "affirmative proof of loss with full particulars" was ever furnished until December 17, 1930, and that seems to have only gone to the pay roll padding. The record does not show that to this day any proof has ever been presented to the indemnity company on the merchandise conversion feature of the claim, other than is contained in Plaintiff's Exhibit 1.

The second claimed error, that is, that the court improperly permitted evidence, and especially Plaintiff's Exhibit 4, to go to the jury as evidence of a waiver of the conditions of the policy on the part of the indemnity company, is well taken. The amended petition pleads performance. It does not plead waiver. These two affirmative allegations are incompatible. If one is true, the other cannot ordinarily be true, and in the case before us, in the absence of amendment, such evidence for the purpose of showing waiver was improper. We do not feel that this well-settled rule need be fortified by reciting of authorities.

Referring further to this letter, there is nothing therein that implies a waiver, or that should have led the receiver to that belief. On the contrary, it must have had the opposite effect, for the letter explicitly states that any longer time required to furnish proof "is without prejudice to our rights or defenses we may now have or which may hereafter arise, or a waiver of any of the terms or provisions of the bond."

Considering further the third error charged, it must follow that if the question or issue of waiver was not properly in this case, the trial court erred when it said to the jury:

"None of the provisions of this bond shall be altered or waived except in writing, under seal, executed by authorized officers of the surety at its home office. (The court reading from the bond).

"Now, it applies as I gave it to you, unless you find by a preponderance of the evidence that the terms were waived in writing by authorized officers of the company."

For the reasons assigned, the judgment is reversed and the cause remanded.

LEMERT and MONTGOMERY, JJ, concur.