Greco, PJ.
The defendant, Enterprise Rent-A-Car Company of Boston, Inc. (“Enterprise”), has appealed the judgment entered in favor of the plaintiff, Excel Physical Therapy (“Excel”), after a jury-waived trial. Enterprise argues on appeal that the trial judge erred in awarding G.L.c. 90, §34M personal injury protection (“PIP”) benefits to Excel on the grounds that Excel’s bills for services were not presented to Enterprise in a timely manner, and that, in any event, the records relied upon by Excel were not sufficient to warrant a finding in its favor. Enterprise also argues that no money was due to Excel in view of the fact that Enterprise tendered full payment for Excel’s bills prior to judgment being entered.
The trial judge found the following facts. On July 26, 2005, Marilyn Smith (“Smith”) was injured while she was a passenger in a motor vehicle rented from Enterprise. Enterprise is a self-insurer of the vehicles it rents. Smith was treated by Excel from September 12, 2005 to October 27, 2005 for injuries allegedly sustained in the accident. Shortly before the end of this treatment, Enterprise received Smith’s application for PIP benefits along with an authorization for Enterprise to obtain her medical records.[1] Excel’s bills for these services totaled $1,865.00.
The judge also found that at the time of the automobile accident, Smith was already receiving treatment from Excel for a work-related injury to her lumbar spine sustained on July 2, 2005. She completed treatment in October, 2005. However, in April of 2006, Smith again experienced pain and resumed treatment with Excel. That treatment continued from April 3, 2006 through August 23, 2006.[2] The bill for services rendered during that period was $2,034.00.
The trial judge further found that a doctor hired by Elco Administrative Services (“Elco”) to perform an independent medical examination (“IME”) of Smith on January 6, 2006 was unable to establish a causal relationship between Smith’s *146 injuries and the July 26, 2005 automobile accident because he had not received any “supporting medical records” related to those injuries. Subsequently, on July 11, 2007, Enterprise received “medical bills” from Excel for the period from September 12, 2005 through October 27, 2005. On July 16, 2007, Elco, on behalf of Enterprise, denied any PIP benefits to Smith. Over two years later, in October of 2009, Excel filed its complaint in this case. On November 18,2009, Enterprise sent Excel a check for $1,865.00 with the indication that it had made a “business decision to tender payment to Excel... pursuant to ... Fascione v. CNA Insurance Company, 435 Mass. 88 (2001).” The check was neither cashed nor returned. Excel sent a second check in the same amount on May 14, 2010. By this time, a stop payment order had been placed on the prior check. Excel returned the second check to Enterprise, stating that its “settlement offer” was being rejected.
Based on the above findings, the trial judge concluded that Excel “ha[d] established by the applicable standard that [Smith’s] injuries and related treatment were related to the July 26, 2005 accident.” Moreover, he found “no justification for Enterprise denying PIP benefits for either” the treatment in 2005 or in 2006.
1. The Trial Evidence. Excel called one witness at trial. Jennifer Duffy (“Duffy”), the claims adjuster assigned by Elco to handle Smith’s claim, testified on direct examination that on July 11, 2005, she received the PIP application and the authorization to obtain Smith’s medical records. On cross-examination, she testified that she arranged for the IME and received a copy of the report. Duffy further testified, without objection, that according to the IME report, Smith stated that she injured her lumbar spine at work on July 2, 2005, and that, as a result of the injury at work, she had “three lumbar herniated discs” for which she was being treated at Harvard Vanguard Medical Associates and at Excel. Smith was undergoing that treatment at the time of the automobile accident that gave rise to the PIP claim. Duffy also testified as to the IME doctor’s conclusions noted above. In view of the IME report, Duffy denied Smith’s PIP claim on July 16, 2007 and closed her file.[3]
Exhibits 1, 2, and 3 contain the only other evidence in the record concerning Excel’s bills and Smith’s treatment. Exhibit 1 consists of four pages. The first page is an affidavit of Reginald Osuji (“Osuji”) in which he represented himself as a “physical therapist licensed to practice” in Massachusetts, and stated that he has attached Excel’s “records, reports and bills for Marilyn Smith.” He further stated that the “patient’s injuries were causally related to the patient’s accident of 07/26/05,” that “[a]ll of the treatment was necessary and causally related to” to that accident, and that “all of the charges for services rendered were fair and reasonable.” Osuji’s affidavit was dated November 12, 2010, i.e., five days before trial. Pages 2 and 3 of the exhibit indicate a “Current Diagnosis” of “Sprain/strain Injury to Cervical Area” and “Thoracic Sprain/Strain.” A list of items follows. The first is the date of a “PT initial Eval.,” followed by treatment given on twelve different days. As to each item, a date is given, along with a description of a service (for example, “97001 Electric Stim, unattended”) and its cost. The total cost for the services listed on pages 2 and 3 was *147 $1,865.00. The fourth page of exhibit 1 is in a
similar format. It also indicates that the date of the incident involved was the date of the automobile accident. However, the insurance company referenced was Premier Insurance, not Excel. Page 4 lists services rendered to Smith from April 3, 2006 (i.e., six months after the services discussed above) until August 23,2006. The diagnosis indicated for these services was “SPAIN/STRAIN NECK” and “Sprain/strain Thoracic.” The total cost for the services listed on page 4 was $2,034.00. The final exhibit (No. 3) is labeled in the record as “HFCA Forms,” and contains eight pages. There is no real text in these pages. The words “Smith,” “Excel,” “Reggie Osuji PT,” and “Premier” are somewhat randomly set out without explanation. Several dates are listed that correlate to the treatment dates in 2005. There was no reference, however, in the HFCA forms to the treatment in 2006.
Excel in its brief maintains that Duffy acknowledged that she received the 2006 bills well before trial. The transcript indicates otherwise. When asked whether she knew that Smith “was treating at Excel... in 2006,” Duffy answered, “I don’t recall. I don’t believe so.” She went on to acknowledge that she received the IME report in January of 2006, and that she knew Smith was treating at Excel. However, Duffy testified repeatedly that she had not received any bills relating to the 2006 treatment. The IME report was also admitted into evidence without objection. Consistent with Duffy’s testimony, the examining doctor was “unable to establish a causal relationship with any reported injuries and the motor vehicle accident... in that there were no supporting medical records available for [his] review” at the time of the examination.
At the close of the evidence, the trial judge denied Enterprise’s motion for a directed verdict.
2. Timeliness of Receipt of Medical Records. Excel filed its PIP application in October, 2005. Submitted with the application was an authorization for Enterprise to obtain Smith’s medical records for Excel’s treatment. Under G.L.c. 90, §34M, a claim must be made “within at least two years from the date of accident and shall include a written description of the nature and extent of injuries sustained, treatment received and contemplated and such other information as may assist in determining the amount due and payable.” The statute thus requires a description of the injuries sustained and the treatment received, along with, not instead of, “such other information.” While the PIP application itself is not included in the record of this case, the trial court found that Enterprise had the ability to obtain Smith’s medical records by virtue of the authorization given Enterprise to obtain her medical records. Thus, there was no prejudice. The trial judge was justified in these circumstances to conclude that § 34M was not violated as to the 2005 records found on pages 2 and 3 of exhibit 1.
The same cannot be said as to whether Enterprise timely received or had the ability to obtain the 2006 records (found on page 4 of exhibit 1). A fair reading of Duffys testimony is that she never received the 2006 records. There is no evidence to indicate that these records were received before November 12,2010, the date of Osuji’s affidavit. This was five days before the trial, and well over two years from the filing of the PIP application. Apparently, counsel for Excel relies on the same authorization in 2005, mentioned above. If that were the case, the insurer would be required to seek periodically such records even though there was no indication there were any. *148 It should be noted that the 2006 treatment began over five months after the 2005 treatment had ended. The notion that Excel would alert the insurer that records of treatment well after an accident were now in play was also not apparently considered. Instead, the 2006 records were essentially slipped into Osuji’s affidavit on the eve of trial. Thus, as to the 2006 records, the authorization in 2005 to obtain records was not sufficient. Moreover, Enterprise was prejudiced to the extent that the 2006 records were not available to the IME doctor.
3. Sufficiency of Evidence on Causality. As the trial judge noted, the burden was on Excel to prove that Smith’s injuries and subsequent treatment were causally related in some way to the automobile accident. Provenzano v. Arbella Mut. Ins. Co., 2007 Mass. App. Div. 46, 47. Enterprise argues on appeal that the judge’s finding that there was a causal relationship was not warranted. “The relevant standard for assessing the sufficiency of the evidence is whether, construing the evidence and all reasonable inferences therefrom in the light most favorable to [the plaintiff], any combination of circumstances could be found to support [its] claim.” Id. As part of this assessment, “[i]t is well established that hearsay evidence admitted without objection may be considered by the [fact finder] and may be given any probative value it possesses.” Commonwealth v. Stewart, 398 Mass. 535, 543 (1986). While Enterprise did not object to the admission of the exhibits discussed above, it claims that this evidence was not sufficient to warrant a finding for Excel. In 1996, this Division noted that under §34M, benefits would be “due and payable” provided there was ‘“reasonable proof’ of the expenses incurred by the claimant.” Brito v. Liberty Mut. Ins. Co., 1996 Mass. App. Div. 63, 65, vacated on other grounds, 44 Mass. App. Ct. 34 (1997). ‘“Reasonable proof’ in its most prosaic sense would logically require some form of ‘independent evidence,’ Popeo v. Liberty Mut. Ins. Co., 369 Mass. 781, 786 (1976), or appropriate proof of the claim beyond the mere ‘unverified declaration of the party in interest’ which would permit the insurer to make a reasonable assessment of its liabilities and the rights of the claimant. Fitchburg Sav. Bank v. Massachusetts Bonding & Ins. Co., 274 Mass. 135, 152 (1931).” Id. Moreover, in Ortiz v. Stein, 31 Mass. App. Ct. 643 (1991), the Appeals Court noted that proof of
causation “generally requires the testimony of an expert linking negligence to injury,” and that “ [t]o permit that element to be satisfied by the affidavit ‘report’ of a physician who has not examined the plaintiff is to introduce a radical change in the law applicable to the trial of such claims.” Id. at 646. However, an expert opinion may be presented through a medical record without the testimony of a live witness. See Bailey v. Cataldo Ambulance Serv., Inc., 64 Mass. App. Ct. 228, 234-235 (2005).
In this case, in the absence of any evidence to the contrary, it could be inferred that Osuji was the examining therapist. Moreover, there was no indication that the 2005 incident was anything but a garden variety car accident. The diagnosis does not appear to have been complicated, and treatment was completed in a short period of time. In these circumstances, Excel satisfied its burden, and it cannot be said that the finding of the trial judge as to the 2005 damages was not warranted. See Physical Rehabilitation Group, Inc. v. Arbella Mut. Ins. Co., 2012 Mass. App. Div._(No. 11-ADMS-10041, issued June 25, 2012). In view of our conclusion above that the 2006 records were not timely provided, we need not address the causality issue as to that treatment.
4. The “Fascione” Payment. Relying on Fascione v. CNA Ins. Cos., 435 Mass. 88 *149 (2001), Enterprise argues that the trial court erred in assessing interest, costs, and attorney's fees with respect to the 2005 bills because on November 18, 2009, it had tendered full payment in the amount of $1,865.00 for those bills. That payment was rejected by Excel. Any reliance on Fascione is misplaced. In Fascione, CNA made initial payments upon the claim being made. When further amounts were sought, CNA sent an additional check for what it incorrectly thought was the amount due. One month later, Fascione commenced an action under G.L.c. 90, §34M. A month after that, after further investigation, CNA “discovered its error” and mailed Fascione a check for the balance of PIP payments due. Id. at 89. In those circumstances, the Supreme Judicial Court awarded summary judgment to CNA, stating that “[wjhile late payments are not to be encouraged, it is more likely that the Legislature was concerned with insurers that dispute their obligation to pay PIP benefits and force claimants to litigate their case to judgment, rather
than insurers that pay PIP benefits inadvertently after the thirty-day period.” Id. at 95. We do not read Fascione to mean that an insurer can avoid attorney’s fees simply by paying the balance due at any point after litigation was commenced. To do so would render meaningless the provision in §34M that “[i]n any case where benefits due and payable remain unpaid for more than thirty days, any unpaid party shall be deemed a party to a contract with the insurer responsible for payment and shall therefore have a right to commence an action in contract.”
Accordingly, we affirm so much of the judgment as is related to the award of damages in the amount of $1,865.00, but vacate the award in the amount of $2,010.00. The case is returned to the Lowell Division of the District Court Department for a determination of whether the reduction in damages would have any effect on the award of attorney’s fees.
So ordered.

 Enterprise used the services of a different entity, to wit, Elco Administrative Services, to administer Smith’s PIP claim.

 On March 30, 2007, Smith received additional treatment, the $24.00 cost for which is included in the $2,034.00 total for the 2006 bills.

 In response to Excel’s interrogatories, Enterprise answered that on July 11, 2007, five days before Duffy closed the file, it had received Excel’s bill in the amount of $1,865.00 for services rendered in 2005.