## CHASE NAT. BANK OF CITY OF NEW YORK v. FIDELITY & DEPOSIT CO. OF MARYLAND.

### No. 364.

Circuit Court of Appeals, Second Circuit.
July 22, 1935.

Thomas E. White, of New York City (Joseph F. Murray and Thomas E. White, both of New York City, of counsel), for appellant.

Mudge, Stern, Williams & Tucker, of New York City (H. G. Pickering, Stuart H. Steinbrink, and Paul D. Miller, all of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

Toward the end of the year 1926 the plaintiff (hereafter referred to at times as the Chase Bank) loaned $600,000 to Seminole County Bank, taking as security for the borrower's notes certificates of indebtedness to the same amount of the city of Sanford, Fla., payable to the borrower and by it indorsed. Thereafter the notes fell due, the Seminole County Bank became insolvent, and the Chase Bank made a settlement with its liquidator (with the consent of the present defendant), leaving $500,000 of the indebtedness still unpaid. Meanwhile the certificates of indebtedness which the Chase Bank held as collateral had been repudiated by the city of Sanford. They were declared invalid by the decision of this court in City of Sanford v. Chase National Bank, 50 F.(2d) 400. On October 29, 1931, the Chase Bank commenced the present action, which is a suit upon a policy of insurance issued by the defendant in the form of its "Securities Blanket Bond." Thereby the defendant undertook to indem-nify the plaintiff against "direct losses" which it might sustain by reason of "having in the ordinary course of business in good faith and without actual notice taken * * * securities * * * which may prove" to have been (a) forged or invalid, (b) stolen, or (c) otherwise defective in title. Recovery was sought to the limit of the policy, $100,000, on account of the loss resulting from the invalidity of the above-mentioned certificates of deposit. By agreement of counsel, decision of the defendant's motion to dismiss was reserved, and there was submitted to the jury only the question whether the plaintiff took the certificates of indebtedness in the ordinary course of business, in good faith and without actual notice of their invalidity. This question the jury answered in the affirmative; and the court directed judgment for the plaintiff in the sum of $100,000, with interest.

The defendant (appellant) contended below, and contends here, that our decision in the City of Sanford Case is a conclusive determination of the fact that the Chase Bank did not take the certificates of indebtedness in good faith and without actual notice of their invalidity. We there held that the certificates of indebtedness were invalid because they had not been authorized by the city commission, nor offered for sale, nor advertised, as required by the city charter. We then proceeded to consider whether the city was estopped to deny their validity in the hands of the Chase Bank, the District Court having held that it was. City of Sanford v. Chase Nat. Bank, 44 F.(2d) 206. After stating that under some circumstances a municipality may be estopped as against bona fide holders for value from asserting that necessary conditions precedent to the issuance of its bonds have not been fulfilled, the opinion continued, 50 F.(2d) 400, page 405:

"But, if the municipality has no statutory power to issue the bonds under any possible situation of facts, it cannot be estopped by any recitals in them from setting up its lack of power [citing authorities]. And at bar it appears that the mayor and city clerk who executed the certificates of indebtedness were not authorized to make recitals binding on the city. Moreover, the bank was not a bona fide holder entitled to rely upon such recitals.

"With full knowledge either known or easily ascertainable of the requirements of this city charter, the plaintiff [a typograph-

ical error for defendant] advanced these moneys to the Seminole Bank on its notes, and believing the same to be for the plaintiff's use, expecting to be reimbursed from the sale of the bonds which it expected to sell. But, to impose liability on this municipality, the law requires that the provisions of the city charter be complied with when it borrows money. With such lack of power in the mayor to bind the city with respect to these certificates of indebtedness, none may be implied by his action. * * *"

Seizing upon the statement in the above quotation that "the bank was not a bona fide holder entitled to rely upon such recitals," the appellant argues that that is a conclusive finding that the plaintiff did not take the securities in good faith and without actual notice of their invalidity, as the policy of insurance requires.

■■ The opinion is not properly susceptible of this construction. The subject of discussion was the defense of estoppel. In the case of municipal securities, purchasers are charged with knowledge of the provisions of law governing their issuance, as had been stated earlier in the opinion. 50 S.W.(2d) 400, page 404. Hence there could be no estoppel as to these certificates, issued by the mayor without authority from the commission and without authority to make the recitals they contained. Under such circumstances there cannot be "a bona fide holder" of the securities—the doctrine does not apply. This is the significance of the statement seized upon. It cannot mean, as the appellant would have it, that, even if the other conditions requisite for an estoppel existed, the defense must fail because the Chase Bank acted in bad faith. Nowhere does the opinion suggest that the bank had actual knowledge that the mayor was acting without authority; only because the bank was charged with knowledge of the charter provisions did the city prevail. Such imputed knowledge of legal requirements is not actual knowledge, and does not prove lack of good faith in taking the securities. The appellant's contention based on the City of Sanford Case must fail.

■ Equally unsubstantial is the contention that, disregarding that case, the plaintiff did not take the certificates of indebtedness in good faith and without actual notice of their invalidity. This was a question left to the jury under detailed instructions (to which no exceptions were taken) as to what was meant by the phrase in connection with taking commercial paper. Clearly the evidence was sufficient to have this issue submitted to the jury; and, that being so, its verdict is conclusive upon this question of fact. Eastman Kodak Co. v. Southern Photo Materials Co., 273 U. S. 359, 375, 47 S. Ct. 400, 71 L. Ed. 684.

■■ Error is assigned to the exclusion of testimony of a witness as to the existence of a custom in the city of New York in 1926 to require a legal opinion in respect to the validity of municipal securities before making a loan in reliance on such securities. The trial judge ruled that the witness had not shown sufficient qualifications to testify to such a custom. Whether a witness is qualified rests largely in the discretion of the trial court. Wigmore, Evidence (2d Ed.) vol. 1, § 561. There was no such an abuse of discretion as to require a reversal of the judgment. Although the witness was in business as an investment counsel, had formerly been engaged in buying and selling securities, including municipal bonds, and was an author and lecturer on the subject of investment bonds, his experience in connection with the handling of municipal securities had been with investment bankers rather than commercial bankers. Any custom which would have been relevant in the case at bar was a custom relating to municipal securities taken as collateral for a loan by a commercial banker.

■ Objection is also made to the exclusion of certain parts of the record in the City of Sanford Case. Most of the record was received pursuant to a stipulation that the record was to be admitted subject only to objection as to materiality and relevancy. As the appellant's brief does not point out in what respect he was prejudiced by the exclusion of any portion of the record, it is unnecessary for us to consider whether in the abstract error was committed in excluding the evidence.

■ There remains for consideration the amount of the plaintiff's recoverable damages, which is the most serious question in the case. The policy was originally written for the period of one year beginning April 17, 1923. By means of ten continuation certificates, it was continued in force from year to year until April 17, 1934. The court below decided that the loss was sustained on June 8, 1931, when our opin-

ion in the City of Sanford Case was handed down declaring the certificates of indebtedness invalid. The appellant contends that, since the certificates were invalid from their inception, any loss because of their invalidity was sustained by the plaintiff either (1) when the money was loaned to the Seminole County Bank, or (2) when the borrower's notes became in default on May 1, 1927, or (3) when the Seminole County Bank closed its doors on August 6, 1927. We think the last-mentioned date is when the loss was suffered. Certainly it was not suffered so long as the borrower remained solvent. Phœnix Nat. Bank & Trust Co. v. Aetna Cas. & Surety Co., 44 F.(2d) 511 (C. C. A. 6), reversed in 285 U. S. 209, 52 S. Ct. 329, 76 L. Ed. 709, is not in point because there the loss was not due to invalidity of collateral security taken by the insured. When the Seminole County Bank closed its doors, it became practically inevitable that the Chase Bank would have to collect upon its collateral. It seems to us that then occurred the loss because of invalidity of the security, even though its invalidity had not then been judicially established.

[8] It is suggested that the plaintiff did not prove that the security would have had value, even if it had been valid. There is a presumption, however, that an obligation is worth its face value. Thomas v. Zahka, 228 N. Y. 187, 126 N. E. 707. The defendant's evidence that in April, 1931, all the bonds of the city of Sanford were in default could have no bearing on the value of the city's obligations in August, 1927. Nor would it overcome the presumption, in our opinion, even if the date of the Chase Bank's loss were taken as June, 1931.

Finally it is urged that the maximum recovery permissible if the loss was sustained in August, 1927, was $21,303.67. This involves a construction of the terms of the policy, and the effect of the payment by the appellant of certain other losses. During the period between April 17, 1923, when the policy was issued, and April 17, 1934, when the last renewal expired, notice was given of three losses which the appellant paid. The dates of the several notices and the amount of the respective losses are as follows: July 21, 1927, $22,-500; November 28, 1930, $40,000; July 22, 1932, $38,696.33. The relevant portions of the policy read as follows:

"This Guarantee is only intended to cover such losses as shall be discovered within the said period of twelve (12) months, or in event of non-renewal within twelve months from expiry date hereof, whether the same may have arisen before or during the currency of this Guarantee, but not those discovered subsequently. * * *

"2. Any sum paid in settlement of any loss hereunder shall be deducted from the amount of this policy as of the date of notice of such loss by the Assured to the Company, and only the remainder of such amount shall apply to other losses covered hereunder, whether sustained before said date or thereafter, or partly before and partly thereafter. The sum so deducted shall be automatically restored as of the date of said notice, but only as to losses sustained after said date. In consideration of such restoration, the Assured shall pay to the Company, on demand, an additional premium computed pro rata upon the sum so paid from the date of restoration to the end of the current premium year."

Both parties are agreed that the coverage for losses sustained in August, 1927, was $100,000. Although the payment of the loss of $22,500, of which notice was given on July 21, 1927, reduced the coverage for prior losses to $77,500, the full coverage was automatically restored as to losses sustained between July 21, 1927, and the end of the current premium year; that is, April 17, 1928. The dispute is as to the effect of the payment of the losses of which notice was given in November, 1930, and July, 1932. The appellant contends that both of these payments must be deducted from the coverage applicable for any other loss sustained prior to those dates, leaving only $21,303.67 available for the August, 1927, loss.

A literal reading of condition 2 leads to this result, but we cannot believe that such meaning was intended. Condition 2 presupposes that any loss sustained will be paid as soon as it is discovered and notice of claim given the insurer, and that the coverage will be restored forthwith. Were it not so, the insurer by willfully withholding payment of a loss for which it was unquestionably liable and of which it was notified on July 1, for example, could apply payment of a loss sustained and paid a month later to destroy its liability on the prior loss, although there would have been coverage for both losses (by reason of the restoration provision) but for the insurer's willful default. This hypothetical situation is not designed to impute any bad faith to

the defendant or to imply that the loss in dispute should have been paid in 1927 when the defendant was notified by the plaintiff that the city of Sanford had repudiated the certificates of indebtedness. It is used merely to illustrate the unreasonableness of the construction contended for .by the appellant. The giving of notice of a loss fixes the liability of the insurer therefor, and, if the loss is paid, reduces the coverage for other prior losses subsequently discovered. Payment of the loss (whenever made) restores as of the date of notice of loss full coverage for losses sustained thereafter. The language cannot reasonably be read as meaning that payment of subsequent losses shall reduce the coverage as to losses for which liability has already been fixed. The defendant's liability was fixed in August, 1927, even though the exact amount of it, or its existence in any amount, was still in dispute. Accordingly, we hold that the 1930 and 1932 payments did not reduce the coverage in force in August, 1927. The result would be the same if the date when the loss was suffered were taken as June, 1931, instead of August, 1927.

It will suffice to add that we have examined the authorities relied upon by the appellant, but none ·of them involves a contract sufficiently similar to the policy in suit to be apposite.

Judgment affirmed.