ELIOT SAVINGS BANK *vs.* THE AETNA CASUALTY AND
SURETY COMPANY.

Suffolk.   October 7, 1941. — November 27, 1941.

Present: FIELD, C.J., DONAHUE, QUA, COX, & RONAN, JJ.

*Bond,* Of indemnity, "Bankers' blanket bond." *Bank and Banking.*

Loss, within the coverage of a "bankers' blanket bond" indemnifying
a bank against losses due to forgery, occurred when the bank lent
money upon a forged note purported to be secured by a pledge of
shares of stock represented by a certificate delivered to it with a
forged power of attorney for transfer, although periodically thereafter
a renewal note, likewise forged by the same forger, was received and
the then outstanding note was stamped paid and delivered to the
forger, the same security remaining, and the forgery was not dis-
covered and restoration to the defrauded owner of the stock required
until some years later.

CONTRACT.   Writ in the Superior Court dated October
26, 1938.

The case was heard by *Swift,* J.

*J. S. Ballantyne,* for the plaintiff.

*M. McConnell,* for the defendant.

Cox, J.   This case was heard by a judge of the Superior
Court, sitting without jury, upon a statement of agreed
facts.   He found for the defendant and refused to give
twenty-four rulings requested by the plaintiff.   The parties
have not discussed specifically any of these rulings, but
have rested their contentions on the general question of the
right of the plaintiff to recover.   It is enough to say that
the denial of some of the requests, if error, is sufficient to
vitiate the finding that was made.

The defendant, at the plaintiff's request and for its bene-
fit, executed its bankers' blanket bond, dated May 11,
1930, together with a rider by which the defendant agreed
that the bond should cover losses under a prior bond,
therein referred to and by the terms of which the defendant
was free from responsibility for losses sustained prior to

May 11, 1927. The 1930 bond, executed by the defendant, was in full force and effect at the time of the hearing and is the subject matter of this action. By its terms the defendant undertakes to hold the plaintiff harmless and indemnified "from and against such losses as the . . . [plaintiff] may sustain subsequent" to noon of its date and while in force, "and discovered prior to the expiration of twelve months from . . . [its] termination." There is a further provision that the "losses against which this bond shall cover . . . [the plaintiff] . . . are . . . Loss of Property due to forgery or alteration of, on or in any Property by any person or persons, whether in the employ of the . . . [plaintiff] or not." The word "Property," as used in the bond, is defined to include, among other things, money, promissory notes, certificates, and other similar securities in which the plaintiff has a pecuniary interest or which are held by it as collateral.

On or about November 15, 1923, a forger, representing herself to be one O'Brien and the registered owner of a certain certificate of stock, came to the plaintiff in the usual course of business, obtained a loan of $500 and pledged the stock as security. The forger gave the plaintiff a promissory note, purporting to be that of O'Brien, and signed a power of attorney in O'Brien's name purporting to transfer the stock to the bank as collateral security. Additional loans were made to the forger, but they were all prior to May 11, 1927, which was the date of the extreme limit of liability under the prior bond, so called. Prior to May 4, 1926, as the notes given by the forger matured, they were stamped paid and delivered to her upon her giving to the plaintiff new notes for which the stock was pledged as collateral security. Annually, after May 4, 1926, until 1932, the amount of the loan then being $1,430, the forger gave the plaintiff renewal notes, and on each occasion the matured note was stamped paid and delivered to the forger, and the stock was pledged as collateral security for the new note. A note dated January 6, 1932, was not paid at maturity, and on April 21, 1932, the plaintiff, first guaranteeing the signature of O'Brien (that is, the forger's signature)

on the power of attorney, caused·the stock that it held as collateral to be sold, and after applying enough of the proceeds in payment of the note, paid the forger the balance. The last note was stamped paid and delivered to the forger.

On or about May 20, 1937, O'Brien, the true owner of the stock, made claim, and the plaintiff notified the defendant thereof on May 28, 1937. On June 14, 1937, O'Brien brought suit against the company that had issued the stock, as a result of which, by decree of November 29, 1937, the company was required to procure shares of its stock to replace those that had been wrongfully pledged with the plaintiff, and also to pay to her the dividends which she would have received had there not been a sale and transfer by the plaintiff, and costs. Thereafter, the company brought suit against the plaintiff as guarantor of the signature on the power of attorney, and recovered judgment ·for the amounts expended by it by virtue of the decree in the equity suit against it, together with counsel and witness fees, interest and costs. The defendant was seasonably notified of the O'Brien suit and of the action against the plaintiff, was requested to undertake their defence and refused to do so. The plaintiff now seeks to recover the amount paid by it in satisfaction of the execution that issued in the action against it, together with counsel fees and other expenses.

The main point of difference between the parties is as to the time when the loss is to be said to have been sustained. The defendant contends that the plaintiff sustained its loss when it parted with its money in return for the original forged notes and the forged power of attorney. On the other hand, the plaintiff contends that it suffered no loss, that is, no depletion of its assets at those times. The importance of these contentions is recognized, for if the defendant is right in its contention, then all losses were sustained prior to May 11, 1927, and, accordingly, the defendant would not be liable on its bond.

When we revert to the language of the bond itself, we observe that the plaintiff is to be indemnified against such losses as it may sustain subsequently to noon of the effective

date and discovered prior to the expiration of twelve months from the termination of the bond, and that the losses, in so far as we are concerned in the case at bar, are losses of property due to forgery. The ordinary concept of a contract of indemnity such as the one here involved, in the absence of any provision to the contrary, is that it contemplates events arising subsequently to its effective date. See *Rochester* v. *Randall*, 105 Mass. 295, 297; *Thomas* v. *Blake*, 126 Mass. 320, 321–323. In order to make the bond retroactive, the parties executed the rider already referred to. *Fitchburg Savings Bank* v. *Massachusetts Bonding & Ins. Co.* 274 Mass. 135, was an action founded upon a "bankers' blanket bond" that contained the same language as to indemnity as is contained in the bond in the case at bar. There it was contended that the loss was due to the fraud and dishonesty of the plaintiff's treasurer. The clause in the bond relating to dishonesty covered pecuniary loss due to any dishonest act, and that relating to fraud covered loss of property through any other form of fraud or dishonesty. In that case, among other things, the defendant contended that the plaintiff could not have sustained a loss other than a nominal one until it had exhausted every remedy it had against the defaulting officers and the indorsers on several notes that had been taken as a part of the fraudulent scheme. It was held that the word "loss" in the bond meant the deprivation or dispossession of money or property of the plaintiff due to the wrongful acts of its officers "regardless of the security the bank has for the loss, and that the 'loss' occurred and was suffered by the plaintiff, without regard to its possible remedies, when its funds in fact were diverted" on the dates when, in fact, money of the plaintiff was paid out and the notes were received. (Pages 149 and 150.) It would seem that in that case the loss was not discovered until about a month later. It was also said, at page 150, that the plaintiff could sue the defendant on its bond without proof that it had sustained some actual defined loss, not merely nominal, "as the result of the transaction." Although it does not appear that the question involved in the case at bar was precisely

raised in the *Fitchburg Savings Bank* case, yet the language of the court as to the time when the loss occurred is significant.

It is apparent that, in accordance with the terms of the bond, in order that there may be liability there must be an act (in the case at bar, a forgery that is conceded) and also a loss (likewise conceded). The plaintiff contends that the qualification as to time relates only to the time when the loss is actually sustained. It concedes that it parted with its money when the security was deposited and at the later dates when the loan was increased, but it contends that it received value therefor in the form of the original and later notes. In other words, it contends that there was no loss simultaneous with the act insured against. To express it a little differently, the plaintiff contends that, in the case at bar, there was a substitution of assets. In this connection it refers to and seeks to distinguish that line of cases which hold that where there is a misapplication of funds, the funds are lost when the money is first abstracted, and that if the misapplication has occurred prior to the effective date of the bond, subsequent defalcations, after such date, the proceeds of which are used to make good the defalcations existing prior thereto, do not create any liability on the bond. See *Golden Seal Assurance Society* v. *Aetna Casualty & Surety Co.* 207 App. Div. (N. Y.) 628; *Royal Indemnity Co.* v. *American Vitrified Products Co.* 117 Ohio St. 278; 62 Am. L. R. 411. Likewise, it seeks to distinguish that line of cases where a bank pays a forged check and it is held that the moment the check is paid, either over the counter or through the clearing house, its loss is complete. See *Phoenix National Bank & Trust Co. of Lexington* v. *Aetna Casualty & Surety Co.* 44 Fed. (2d) 511. In the case just cited, in discussing the right of the bank to cancel the charge it has made on account of the check, it was said that the "policy" should be read as indemnity against the original loss, and not as holding the liability in the air until it could be finally determined whether the bank had a right to make the charge back, and that banks would desire protection against payments induced by for-

gery, and not against the "uncollectability" of claims resulting from such payments. (Page 512.) It is to be observed that, as in the case at bar the plaintiff received the several notes that were forged as well as the collateral security, so in the case just cited the bank received, in exchange for the money paid over, a forged check.

We do not adopt the contentions of the plaintiff in its attempt to distinguish these cases. We do not consider that the acceptance of the forged notes and the collateral, based, as the latter was, upon a forged power of attorney, amounts to a substitution of assets. *United States Guarantee Co.* v. *Elkins*, 106 Fed. (2d) 136, was an action on a bond that indemnified against any loss sustained through the payment of any check drawn by the insured upon which the signature of any indorser had been forged, and it was held that, when the check was deposited by the forger, the proceeds were dissipated and the loss had occurred. "The immediate and proximate cause of the loss was the forged endorsement of the check, specifically covered by the Forgery Bond." (Page 137.) See *Aetna Casualty & Surety Co.* v. *Peoples Building & Loan Association*, 194 Ark. 773; *National Surety Co.* v. *Wilson*, 63 Colo. 460.

The plaintiff relies particularly upon the case of *Chase National Bank of New York* v. *Fidelity & Deposit Co. of Maryland*, 79 Fed. (2d) 84. In that case the plaintiff had loaned a substantial amount to a bank that subsequently closed its doors. It took, as security for the loan, certificates of indebtedness of a municipality that were subsequently held to be invalid. The bond that was the subject matter of the action undertook to indemnify the plaintiff against direct losses which it might sustain by reason of having, in the ordinary course of business in good faith and without actual notice, taken securities that "may prove" to have been forged or to be invalid. The loan was made in 1926, the borrower was in default on May 1, 1927, and closed its doors on August 6, 1927, and the decision adjudging the certificates invalid was on June 8, 1931. It was held that the loss was suffered when the borrower closed its doors, despite the contention that the loss was sustained

when the loan was made. The bond was in force from 1923 until April, 1934. In deciding in the *Chase* case that the loss was sustained when the borrower closed its doors, it was said that it then became practically inevitable that the plaintiff would have to collect upon its collateral, and that at that time, the loss occurred because of the invalidity of the security even though its invalidity had not then been judicially established, and that no loss was suffered so long as the borrower remained solvent. (Page 87.) We are of opinion that the case at bar is distinguishable. Here the plaintiff lent money upon a forged note secured by a transfer of collateral, the validity of which depended upon a forged power of attorney. In the *Chase* case, so long as the borrower remained solvent, the plaintiff suffered no loss. In that case there was a real substitution of assets, at least in part. In the case at bar, the substitution contended for by the plaintiff consisted of forged paper.

The plaintiff also contends that the renewal notes were forgeries covered by the bond. But we are of opinion that this contention is disposed of by what already has been said. The bond in suit covers actual loss, loss that occurred when the bank parted with its money for the original forged notes and collateral accompanied by the forged power of attorney.

Our attention has not been called to any cases that bear precisely upon the question here to be decided. We are of opinion, however, that the bond in question covers actual loss, and that the practical rule to be adopted is that the loss does not occur at some indeterminate time based upon facts leading, or which should lead, to the discovery of a loss. Reduced perhaps to its lowest terms, the question to be determined depends upon a situation where a bank parts with its money in return for a forged note secured by collateral that depends upon a forged power of attorney. If this situation became known to the bank immediately after the transaction was completed, the first impression would seem to be that the bank had sustained a loss for the reason that its money had been exchanged for something that was worthless because of the forgeries. The fact that

the forgeries were not discovered until later does not change the situation in so far as the value of the note and the availability of the collateral are concerned.  They would be worth no more ten years later on this record than they were when they were given to the plaintiff, and in our opinion the time when the actual loss occurred was when the money was paid out.  This conclusion finds support in *Fitchburg Savings Bank* v. *Massachusetts Bonding & Ins. Co.* 274 Mass. 135.  The cases of *Colerain* v. *Bell,* 9 Met. 499, *Egremont* v. *Benjamin,* 125 Mass. 15, and *Hudson* v. *Miles,* 185 Mass. 582, are distinguishable.

*Exceptions overruled.*