**CITIZENS BANK OF OREGON, an Oregon corporation, Plaintiff,**

v.

**AMERICAN INSURANCE COMPANY, a New Jersey corporation, Defendant and Third-Party Plaintiff,**

v.

**FIRST STATE BANK, a corporation, Third-Party Defendant.**

**Civ. No. 67–16.**

United States District Court
D. Oregon.

Jan. 25, 1968.

F. Brock Miller, Boyrie, Miller & Long, Portland, Or., for plaintiff.

Robert P. Jones, McMenamin, Blyth, Jones & Joseph, Portland, Or., for defendant and third-party plaintiff.

Glen McCarty, McCarty & Rosacker, Portland, Or., for third-party defendant.

## ORDER

KILKENNY, District Judge.

Segregated for trial are the issues of fact and law arising between plaintiff and defendant.

The agreed facts show that prior to February, 1966, the third party defendant made various loans to Pacific Concrete Company, on which Otis P. Jordan was the guarantor. In that month, Jordan asked First State for a $75,000.-00 loan and shortly thereafter its president called the president of the plaintiff and inquired whether plaintiff would loan $75,000.00 to Jordan. They agreed that First State should work out the mechanics of the loan, and on February 10th, Jordan executed and delivered a note in the sum of $75,000.-00 payable to First State. On the following day, First State confirmed the arrangement with plaintiff and enclosed the note for $75,000.00. On February 10th, Jordan had executed and delivered to First State a collateral agreement under which he pledged certain stock certificates of Oregon Portland Cement Company. The receipts were forwarded to the plaintiff, with the note that the stock certificates were retained by First State. On February 11th, plaintiff credited the account of First State with the sum of $75,000.00, First State having issued to Otis P. Jordan its cashiers check in the sum of $75,000.-00 on the previous day. Jordan was then, and at all times since has been, insolvent. Over the years, and long prior to the Jordan transaction, the plaintiff and First State had an inter-relationship of accommodation, one for the other, in order to overcome certain loan limitations.

Prior to said transactions, defendant insurance company for a substantial annual premium, issued to plaintiff its Bankers Blanket Bond and said bond was in force and effect throughout the period in question. A copy of the bond is attached to the pretrial order and

contains, among others, the provision in the footnote.[1]

The certificates of stock which were the subject of the receipt which was turned over to the plaintiff were, in fact, forged and counterfeit. Plaintiff was notified of that fact on May 13, 1966. Jordan was tried and convicted in this Court of forging and counterfeiting the said certificates of stock, among others.

Plaintiff has complied with all the written terms, conditions and covenants, including all notices, filing and cooperation requirements with the Bankers Blanket Bond, here to be construed. The language in the bond is customary form used by defendant insurance company.

Two issues of law have been presented to the Court for decision.

## I.

■ Does insuring agreement of defendant's bond cover forged or counterfeit stock certificates not in the possession of, nor viewed by, the insured?

This issue must be answered in the affirmative for the following reasons:

(1) Under the agreement statement, First State was obviously the agent of the plaintiff and held possession of the bonds for the use and benefit of the plaintiff.

(2) The delivery of the receipt for the bonds carried with it the constructive possession of the bonds.

(3) The endorsement and delivery of the promissory note, aside from everything else, and, as a matter of law, would carry the securities.

These fundamental principles require no citation of authority.

Moreover, the collateral receipt, issued by First State to Jordan, a copy of which was delivered to plaintiff, listed the thirty-seven certificates of the cement company. Endorsed thereon is the following inscription:

"February 10, 1966.
We are advancing $75,000.00 on a note of this date that will be assigned to Citizens Bank of Oregon, Lake Oswego, *secured by this stock*."

Stock valuations of the Oregon Portland Cement Company are printed in the daily issues of each of the metropolitan papers, The Oregonian, and the Oregon Journal. Plaintiff advanced the money on the strength of the security of this stock.

## II.

The second issue of law to be decided by the Court is:

■ (1) Has plaintiff sustained a loss within the meaning of the Insurance Agreement (E) of defendant's bond? Certain well known rules of construction should be used in arriving at a conclusion, among them:

(a) If there is ambiguity, the policy must be construed against the defendant insurance company, and

(b) The entire instrument must be read in connection with construing the particular clause.

■ Under this heading, defendant insurance company contends that the plaintiff must exhaust every remedy it has against Jordan and against the third party defendant, as endorser, before it has sustained a "loss", within the meaning of the insurance clause. Justice Pierce, in an exhaustive opinion on the same general issue, held against defendant's contentions in Fitchburg

1. "(E) Any loss through the Insured's having, in good faith and in the course of business, whether for its own account or for the account of others, in any representative, fiduciary, agency or any other capacity, either gratuitously or otherwise, purchased or otherwise acquired, accepted or received, or sold or delivered or given any value, extended any credit or assumed any liability, on the faith of, or otherwise acted upon any securities, documents or other written instruments which prove to have been counterfeited or forged as to the signature of any maker, drawer, issuer, endorser, assignor, lessee, transfer agent or registrar, acceptor, surety or guarantor. * * *"

Savings Bank v. Mass. Bonding & Ins. Co., 274 Mass. 135, 174 N.E. 324, 74 A.L.R. 274. There, the question presented was the dishonest and fraudulent act of an employee under subdivision (A) of the bond. A close analysis of Judge Pierce's decision will demonstrate that practically all of the language of the insuring agreement, forming the basis for his decision, is present in the agreement before me. There, the Court held that a loss was suffered by a bank within the meaning of the bond, without regard to its possible remedies, when its funds were diverted through fraud and that the bank could sue on the bond without proof it had then sustained some actual defined loss as a result of fraudulent transactions. I find no distinction between "loss" as mentioned in paragraph A and "loss" in paragraph E. I hold as a matter of law that plaintiff, by the advance of money on the forged certificates, sustained a "loss" within the meaning of the policy.

It seems to me that Eliot Savings Bank v. Aetna Cas. & Surety Co., 310 Mass. 355, 38 N.E.2d 59, is quite in point. There, a forgery was involved and the Court held that the "loss" occurred at the time the money was paid out. Here, under that authority, the loss occurred at the time the plaintiff paid the money to First State on the forged securities and the promissory note.

Another well reasoned case on when a "loss" occurs within the meaning of an insuring agreement, such as here under construction, is Smith v. Federal Surety Co., 60 S.D. 100, 243 N.W. 664. The Restatement on Security, § 82, page 236, supports the view that the indemnitor is liable on the happening of the stipulated contingency, irrespective of whether the indemnitee has any recourse against a third person.

## III.

Another issue of law which was reserved to the time of trial is whether *ordinary* negligence, or claimed lack of due care, by plaintiff, would be a defense. Under Oregon law, a person may act in good faith and, at the same time, be negligent. However, there is a legal distinction between good faith and negligence. "Honesty" is good faith. "Dishonesty" is bad faith. Bank of California National Assn. v. Portland Hide & Wool Co., 131 Or. 123, 139, 282 P. 99 (1929). Here, we are dealing with the purchase of a negotiable instrument, such as was involved in Topco Associates, Inc. v. First National Bank of Portland, 202 Or. 32, 39–40, 273 P.2d 420, 423 (1954), where it is said that "Prudence is not the criterion. * * * The question is one of good faith or bad faith, honesty or dishonesty. * * *" Of course, want of due care has nothing to do with honesty or dishonesty. Here, the language with which I am concerned is " * * * any loss through the insured's having *in good faith* and in the course of business * * * accepted or received * * * or otherwise acted upon any securities, documents or other written instrument which prove to have been counterfeited or forged as to the signature of the maker. * * *" A Bankers Blanket Bond, such as the one before me, was involved in First National Bank of Crandon v. United States F. & G. Co. of Baltimore, 150 Wis. 601, 137 N.W. 742, in which the Court held that mere negligence on the part of the insured which resulted in loss is not a defense to an action on the bond, unless such negligence amounts to fraud or bad faith. Fidelity & Deposit Co. of Maryland v. Courtney, 186 U.S. 342, 22 S.Ct. 833, 46 L.Ed. 1193 (1902) is in support.

It is my present view that we should go forward with the trial and receive evidence in connection with the alleged lack of due care. At the close of the evidence, I shall then decide whether I should take the issue from the jury or permit the jury to pass on the issue and later decide if I should enter a judgment in favor of the plaintiff, notwithstanding an adverse verdict.