**UNITED BANK & TRUST COMPANY OF NORMAN, OKLAHOMA, an Oklahoma state banking corporation, Plaintiff–Appellee,**

v.

**The KANSAS BANKERS SURETY COMPANY, a Kansas corporation, Defendant–Appellant.**

No. 89–6115.

United States Court of Appeals, Tenth Circuit.

April 24, 1990.

---

Steven M. Dickey (Todd Markum with him on the brief) of Dickey & Dickey, Oklahoma City, Okl., for plaintiff-appellee.

Gregory J. Bien of Sloan, Listrom, Eisenbarth, Sloan & Glassman, Topeka, Kan., for defendant-appellant.

Before MOORE and EBEL, Circuit Judges, and SAM, District Judge.*

JOHN P. MOORE, Circuit Judge.

This appeal arises from a dispute over whether a bankers blanket bond issued by The Kansas Bankers Surety Company (KBS) to United Bank & Trust Company of Norman, Oklahoma, covers a loss suffered by United as a result of its accepting counterfeit securities as collateral. The facts were undisputed, and the parties filed cross-motions for summary judgment. The district court held that the bond covered the loss and entered judgment for $38,000 in favor of United. KBS appeals this ruling. We conclude the district court incorrectly determined United sustained the loss while covered by KBS's bond; therefore, we reverse.

On October 1, 1984, United loaned Jack Taylor $25,721.23 in exchange for which Mr. Taylor executed a promissory note and security agreement and delivered to United original stock certificates as collateral. Mr. Taylor timely renewed the note on four occasions, reducing the principal amount each time. On May 23, 1985, more than seven months after the Taylor transaction, KBS issued a bankers blanket bond to United. The bond incorporates a Loss Sustained Rider which provides that the bond "applies to loss *sustained* and discovered by [United] *after 12:01 a.m. of [May 23, 1985,]* and while this bond is in force." (emphasis added). The Rider also provides that "[l]oss sustained occurs *at the time of the act,* casualty or event *which caused the loss."* (emphasis added). Finally, Insuring Agreement (E) of the bond covers "[l]oss resulting directly from the insured having, in good faith, ... extended credit ... on the faith of ... any original ... security" which is counterfeit.

Mr. Taylor defaulted in November 1986. Pursuant to the security agreement, Merrill, Lynch, Pierce, Fenner & Smith sold the collateral on United's behalf for $33,957.30. United applied part of the proceeds to the balance due on Mr. Taylor's note and the remainder to another loan in the name of Jack Taylor and Elizabeth Bertinot. Merrill Lynch subsequently informed United that the securities were counterfeit. United then timely notified KBS of a possible claim. KBS denied coverage, asserting

* Honorable David Sam, United States District Judge for the District of Utah, sitting by designa-
tion.

that United had sustained the loss at the time it extended credit to Mr. Taylor and, therefore, prior to the effective date of the bond.

Merrill Lynch obtained a judgment against United for the sales price of the counterfeit securities plus $4,042.70 in attorneys' fees. KBS again denied coverage, and United filed this action against KBS to recover the $38,000 which it had paid to Merrill Lynch. The parties cross-moved for summary judgment on the issue whether United sustained the loss during the coverage period of KBS's bond. The district court held for United. It rejected KBS's argument that United sustained the loss at the time it extended credit to Mr. Taylor and, therefore, prior to the bond's effective date. It reasoned that if Mr. Taylor had not defaulted, United would have suffered no loss. The court found instead that United's actual loss occurred when Merrill Lynch obtained its judgment against United as a result of United's resort to the counterfeit collateral to satisfy Mr. Taylor's outstanding balance. The court found, alternatively, that United sustained the loss when Mr. Taylor defaulted. Since both Mr. Taylor's default and the judgment in favor of Merrill Lynch occurred during the period of coverage, the court concluded KBS was liable to United for the $38,000 loss which United had sustained.

■ This court conducts a *de novo* review of a district court's ruling on summary judgment. *Osgood v. State Farm Mut. Auto. Ins. Co.*, 848 F.2d 141, 143 (10th Cir.1988). When the district court grants a motion for summary judgment, we must examine the record to determine whether a triable issue exists; if one does not, the only issue we face is whether the district court properly applied the substantive law. *Id.* Since the parties do not dispute the facts of this case, the only issue we face is whether the district court properly held, as a matter of law, that United sustained the

loss at the time Merrill Lynch obtained its judgment against United.

■ Courts interpreting fidelity bonds follow the liberal rules applicable to insurance contracts, not the strict rules of suretyship. *Texas Nat'l Bank v. Fidelity & Deposit Co.*, 526 S.W.2d 770, 774 (Tex.Civ. App.1975). Where a contract is complete and unambiguous, its plain language is the only legitimate evidence of the parties' intent. *Mercury Inv. Co. v. F.W. Woolworth Co.*, 706 P.2d 523, 529 (Okla.1985). The language in a contract is given its plain and ordinary meaning unless some technical term is used in a manner meant to convey a specific technical concept. *Id.*[1]

KBS contends that the district court erroneously interpreted the bankers blanket bond. It asserts that fidelity bonds, absent a clear showing of contrary intent, are presumed to have prospective operation only. 13 *Couch on Insurance 2d* § 46:176, 137 (Rev. ed. 1982). KBS argues that by applying the bond's protection to an act which occurred prior to the inception of coverage, the district court gave the bankers blanket bond retrospective application despite the parties' express intent to limit KBS's liability to prospective losses. Without such a limitation, KBS contends, it would be unable to calculate the period for which it is liable under the bond.

To support its position that the district court's interpretation would result in retrospective application of the bond contrary to the parties' intent, KBS points to Insuring Agreement (E) which defines the "act, casualty or event which caused the loss" as the "exten[sion] of credit ... on the faith of ... any original [counterfeit] security." KBS further asserts that the bond does not cover losses resulting from the borrower's default or from a judgment against the insured for the sale of counterfeit securities because these events are not insured risks. Since United extended credit to Mr. Taylor in reliance on counterfeit securities

---

1. United filed its complaint in the District Court of Cleveland County, Oklahoma. The United States District Court for the Western District of Oklahoma asserted jurisdiction pursuant to 28 U.S.C. §§ 1332, 1441. Neither the parties nor the district court discusses which state's law governs this case. United, however, does not dispute these general principles of contract law which KBS forwards in its brief.

prior to the effective date of the policy, United sustained its loss before coverage began and, therefore, cannot recover from KBS.

KBS cites several cases to support its contention that the extension of credit on the faith of counterfeit securities, and not the borrower's default or the insured's resorting to counterfeit collateral, determines when the insured sustained a loss. *Eliot Sav. Bank v. Aetna Casualty & Sur. Co.*, 310 Mass. 355, 38 N.E.2d 59, 63 (1941), for example, holds a bank insured under a bond similar to Insuring Agreement (E) sustained a loss at the time it extended credit in reliance on forged securities and a forged power of attorney although, as in this case, the bank did not discover the forgeries until after the borrower had defaulted and judgment had been obtained against the bank based on the sale of the forged notes. The court reasoned that the bank sustained the loss at the time it exchanged its money for valueless securities regardless of when it discovered the loss. *Id.*

KBS also cites *Citizens Bank v. American Ins. Co.*, 289 F.Supp. 211, 213 (D.Or. 1968), in which a bonding company sought to avoid coverage under Insuring Agreement (E) for a loss resulting from the insured bank's extending credit in reliance on forged securities by claiming that the insured did not sustain a loss until it exhausted all its remedies against the borrower and against the endorser of the counterfeit collateral. The court rejected this argument, holding the bank sustained the loss when it advanced money in reliance on the forged securities. *Id.* at 214.

KBS points out that the *Citizens Bank* court relied on *Fitchburg Sav. Bank v. Massachusetts Bonding & Ins. Co.*, 274 Mass. 135, 174 N.E. 324 (1931). In that case, a bonding company also sought to avoid liability under an insuring agreement which defined "loss" similarly to the definition of "loss" in Insuring Agreement (E) by asserting that the insured bank did not sustain a loss until it had exhausted its remedies against the borrower. *Fitchburg* held, however, that the insured suffered

the loss, without regard to its possible remedies, when its funds were diverted through fraud. *Id.* 174 N.E. at 328.

KBS also distinguishes *Continental Casualty Co. v. First Nat'l Bank*, 116 F.2d 885, 887 (5th Cir.), *cert. denied*, 313 U.S. 575, 61 S.Ct. 1087, 85 L.Ed. 1533 (1941), which interpreted a bonding agreement that insured "against the direct loss sustained, while this bond is in force" to cover only an actual loss, as opposed to a theoretical or bookkeeping loss. The district court relied on *Continental* to support its conclusion that KBS did not sustain a loss at least until Mr. Taylor defaulted because, until then, any loss resulting from the extension of credit in reliance on counterfeit securities was theoretical. KBS contends that *Continental* is inapposite because the Loss Sustained Rider defines the timing of a loss sustained not as the time of an actual loss but when the act causing the loss occurs. Insuring Agreement (E) then defines that act as the extension of credit in reliance on counterfeit securities.

United contends that the district court correctly held that United sustained its loss when Merrill Lynch obtained judgment against United and, therefore, during the effective period of the loan. It asserts that *Chase Nat'l Bank v. Fidelity & Deposit Co.*, 79 F.2d 84 (2d Cir.1935), on which the district court relied, governs this case. In *Chase*, Chase Bank made a loan secured by municipal bonds to a bank which subsequently became insolvent and defaulted on the loan. After the municipality repudiated its obligation on the bonds and the court declared the bonds invalid, Chase sought to recover under its indemnity policy which covered direct losses sustained by reason of Chase's having taken securities which proved to be invalid. *Id.* at 85. The court held that the loss was sustained when it became inevitable that Chase would have to resort to the collateral, and not when Chase made the loan. Indeed, the court noted, "Certainly [the loss] was not suffered so long as the borrower remained solvent." *Id.* at 87.

United asserts that *Chase* is indistinguishable from this case because, like

Chase Bank, United did not sustain a loss at least until Mr. Taylor defaulted on his loan. United contends, moreover, that *Continental Casualty* supports this interpretation of the bond. As the district court noted, *Continental Casualty* holds that a bond covering direct losses sustained while it is effective insures only against actual losses and not against theoretical or bookkeeping losses. United posits that had it discovered Mr. Taylor's deception prior to his default, KBS would have denied a claim by United, asserting that United's loss was theoretical until Mr. Taylor defaulted or until United had to resort to the collateral. Mr. Taylor's default, therefore, logically marks the time at which United sustained its loss.

■ Under the district court's interpretation of the bankers blanket bond, which interpretation United champions, the bond covers losses resulting from an insured bank's extending credit in reliance on counterfeit securities, even though it makes the loan prior to the effective date of the bond. United argues that as long as the actual damages which result from the bank's later resorting to the counterfeit securities or, alternatively, from the borrower's subsequent default occur during the coverage period, United is protected by the bond. This interpretation ignores the plain language of the bond and effectively imposes retrospective liability on KBS for which it neither bargained nor was paid. Moreover, there is no evidence to negate the presumption that the parties intended the application of that language to provide prospective coverage only. The Loss Sustained Rider states that a loss is sustained "at the time of the act, casualty or event which caused the loss," and Insuring Agreement (E) expressly insures against losses resulting from the extension of credit in reliance on counterfeit securities. Since the bond does not cover injury resulting from the insured's foreclosure of counterfeit collateral or from the borrower's default, neither of those events can constitute the *act* or *event* causing the loss to which the Loss Sustained Rider refers.

■ Although neither party nor our research yields any applicable precedent from Oklahoma or Kansas, the weight of authority supports KBS's interpretation of the bond. *Eliot Sav. Bank, Citizens Bank,* and *Fitchburg* all held that under bonds with terms similar to KBS's, the insured bank sustained a loss when it exchanged its money for valueless securities, regardless of when it discovered the loss or exercised its remedies. *Chase,* no doubt, holds directly to the contrary. But the district court's reliance on *Chase* to support the conclusion that United could not sustain a loss while Mr. Taylor's loan remained current ignores the plain language of the Loss Sustained Rider. The Rider does not define "loss sustained" as occurring when the insured's loss becomes an actionable claim but, rather, when the act or event which caused the loss occurs. Since Insuring Agreement (E) defines the risk as the extension of credit in reliance on counterfeit securities, United sustained a loss within the terms of the bond when it extended credit to Mr. Taylor, even though it might not have had an actionable claim against KBS until Mr. Taylor defaulted or Merrill Lynch obtained judgment against it.

The district court, relying on *Continental Casualty,* dismissed this interpretation of the bond because the court believed until damages are sustained by the insured, any loss is a theoretical or bookkeeping loss. The district court's view, however, fails to give effect to the Loss Sustained Rider. That provision is a timing device to determine whether the insured has sustained a loss during the bond's period of coverage. The Rider does not define what constitutes a recoverable loss but, instead, the time at which the insured sustained that loss within the terms of the bond. In this case, United sustained a loss within the terms of the bond when it extended credit to Mr. Taylor in reliance on counterfeit securities regardless of whether United had sustained damages at that time. Since the district court erroneously held that United sustained a loss when Merrill Lynch obtained judgment against United or, alternatively, when Mr. Taylor defaulted, we RE-VERSE the district court's granting of

summary judgment in favor of United and direct entry of judgment for The Kansas Bankers Surety Company.