**Verna Marie GRIMES, Plaintiff-Appellant,**

v.

**Keith Allen SWAIM, Defendant-Appellee.**

**No. 91–6363.**

United States Court of Appeals, Tenth Circuit.

Aug. 3, 1992.

---

John B. Norman of Norman & Edem, Oklahoma City, Okl., for plaintiff-appellant.

Don Manners, Oklahoma City, Okl., for defendant-appellee.

Before LOGAN, BARRETT and EBEL, Circuit Judges.

LOGAN, Circuit Judge.

Plaintiff Verna Marie Grimes brought a diversity action to recover damages for injuries she suffered because of the alleged negligence of defendant Keith Allen Swaim. After a bench trial, plaintiff obtained a judgment for $1.8 million plus prejudgment interest. Plaintiff appeals from an order of the district court finding that defendant's insurer, State Farm Mutual Automobile Insurance Company (State Farm), terminated its obligation under the policy to pay postjudgment interest when State Farm paid into court the policy's $50,-000 liability limit but did not pay accrued postjudgment interest.[1]

Defendant's insurance policy with State Farm provides liability coverage under the heading "SECTION 1—LIABILITY—COVERAGE A." Plaintiff/Appellant Appendix at 133 (hereinafter App.). Then, still under "COVERAGE A," the policy provides:

> *In addition to the limits of liability,* we will pay for an insured any costs listed below resulting from such accident.
>
> 1. Court costs of any suit for damages.
>
> 2. *Interest on all damages* owed by an insured as the result of a judgment until we pay, offer, or deposit in court *the amount due under this coverage.*

*Id.* (emphasis added; other emphasis deleted); *see also* Supplemental Response Brief of Defendant/Appellee Keith Allen Swaim at 4 (quoting policy). "COVERAGE A" also obligates State Farm to pay the premiums or costs of certain bonds and expenses of the insured, such as lost wages if insured is required to attend trial.

After judgment, State Farm attempted to pay to plaintiff the $50,000 policy liability limit. Plaintiff refused to accept it on the grounds that it was not tendered unconditionally and that under the terms of the policy State Farm owed more than just the policy liability limit. State Farm then applied to the district court for an order allowing it to pay its policy limit into the court. The district court authorized the court clerk to accept the $50,000, and six days later State Farm sent a check for $50,000 to the clerk. This amount was paid to plaintiff without prejudice to her claims under the policy.

Subsequently, in determining the amount of postjudgment interest owed, the district court determined State Farm's obligation. The district court reviewed the language of the policy, and concluded that the language at issue—"the amount due under this coverage"—"logically implies the limits of liability." *Id.* at 162.[2] Based on this inter-

---

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

2. The district court gave two reasons for this view. First, the court found it significant that the policy used the singular "amount due" instead of the plural "amounts due." Second, the court stated that it would be illogical to require the insurance company to "deposit in court"

pretation the court held that State Farm's obligation to pay postjudgment interest terminated on the day the court ordered the clerk to accept payment of the $50,000 liability limit.

In this diversity action, we apply Oklahoma substantive law. *See Erie R.R. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). We review de novo the district court's determination of state law. *Salve Regina College v. Russell,* —— U.S. ——, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991). As to issues the Oklahoma Supreme Court has not addressed, we may consider the decisions of other courts to determine how the Oklahoma Supreme Court would decide the issue. *See Adams–Arapahoe Joint School Dist. No. 28–J v. Continental Ins. Co.,* 891 F.2d 772, 774 (10th Cir.1989). "The construction of an insurance policy is a matter of law." *Id.; see also Dodson v. St. Paul Ins. Co.,* 812 P.2d 372, 376 (Okla.1991). Thus, we review de novo the narrow issue in this case: what is the meaning of the policy language that the insurer will pay interest on all damages until it pays, offers or deposits in court "the amount due under this coverage"?

The Oklahoma Supreme Court apparently has not construed the exact policy language at issue here. The Oklahoma Court of Appeals cases cited by the parties are not directly on point. In *Worthan v. Ohio Casualty Ins. Co.,* 535 P.2d 1025 (Okla.Ct.App.1974), the court quoted the following language from the trial court's journal entry of judgment: "The Court holds that whenever the [insurance company] *tendered its policy limits together with the accrued interest* ... such tender stopped the running of interest." *Id.* at 1027 (emphasis added). Plaintiff argues that this supports her position that depositing the policy limits without accrued inter-

est does not stop the running of interest. The appellate court itself, however, did not address the issue. Defendant cites *Baughn v. Busick,* 541 P.2d 873 (Okla.Ct.App.1975), for the proposition that tendering the policy limit alone stops the accrual of postjudgment interest. The court there held, however, that an insurance company's tender after judgment of the policy limit alone, when postjudgment interest had accrued, was *not* "an unconditional payment, or tender, or deposit in court, of 'that part of the judgment which does not exceed the limit of the company's liability thereon.'" *Id.* at 875 (quoting policy). Thus, *Baughn* tends to support plaintiff's position.

Courts in other jurisdictions have addressed the issue before us in the context of policy language like that in *Baughn v. Busick.*[3] Many have concluded that the payment of a policy's liability limit but *without* accrued postjudgment interest does *not* terminate the insurer's liability for postjudgment interest. *See Security Ins. Co. v. Houser,* 191 Colo. 189, 552 P.2d 308, 311 (1976) (holding payment of liability limit alone "constituted only a partial payment" and thus "a tolling of further accrual of interest [did] not occur"); *River Valley Cartage Co. v. Hawkeye–Security Ins. Co.,* 17 Ill.2d 242, 161 N.E.2d 101, 104 (1959) (holding deposit of liability limit did not terminate insurer's obligation for interest); *Glenn v. Fleming,* 247 Kan. 296, 799 P.2d 79, 88 (1990) ("The payment or tender of only the policy limits was insufficient to stop the running of interest on the entire 'amount of any judgment.'"); *Stibal v. Carland,* 381 N.W.2d 855, 858 (Minn.Ct. App.1986) (holding the company's "tender was incomplete and ineffective because it did not include the amount of interest which had accrued on the judgment until

other amounts due such as bond premiums or expenses of the insured.

**3.** Instead of requiring the company to pay interest until it pays, offers or deposits in court "the amount due under this coverage," as in the instant case, the policy language in the other cases, like that in *Baughn v. Busick,* typically

requires the company to pay interest until it pays, offers or deposits in court "that part of the judgment which does not exceed *the limit of the Company's liability* thereon." *See, e.g., Glenn v. Fleming,* 247 Kan. 296, 799 P.2d 79, 88 (1990) (emphasis added).

the date of tender"); *Home Indem. Co. v. Muncy*, 449 S.W.2d 312, 316 (Tex.Civ.App. 1969) (holding deposit of liability limit "did not operate to terminate the insurer's continuing obligation for interest"); *see also Mutual of Enumclaw v. Harvey*, 115 Idaho 1009, 772 P.2d 216, 221–22 (Idaho 1989) (holding an insurer's failure to pay *costs* continues the insurer's liability for interest; finding persuasive the reasoning of *River Valley* and *Stibal*).

Based on the policy language before them, other courts have reached the opposite conclusion. *See Allegheny Airlines Inc. v. Forth Corp.*, 663 F.2d 751, 755, 756 (7th Cir.1981) (finding the policy language "such part of such judgment as does not exceed the limit of the company's liability thereon" to clearly and unambiguously mean that "interest is owed until the Company deposits in court its principal policy limits"); *Cox v. Peerless Ins. Co.*, 774 F.Supp. 83, 85, 87 (D.Conn.1991) (holding payment of liability limit ends obligation to pay postjudgment interest under policy providing that insurer must pay "that part of the judgment which does not exceed our limit of liability for this coverage"); *Levin v. State Farm Mut. Auto. Ins. Co.*, 510 S.W.2d 455, 461 (Mo.1974) (holding "the wording of the policy provision in question [does not require] more than tender or payment of the policy limits"); *Draper v. Great Am. Ins. Co.*, 224 Tenn. 552, 458 S.W.2d 428, 432 (1970) (rejecting *River Valley* on this issue).

Although the above cited cases go both ways, the difference in policy language between those cases and the instant case convinces us that the weight of authority supports plaintiff's position. Despite policy language that the insurer's obligation to pay postjudgment interest continues until it pays, e.g., "the limit of the company's liability," the Oklahoma Court of Appeals in *Baughn v. Busick* and a number of courts in other jurisdictions have held that payment of the liability limit without accrued interest does not end the obligation for postjudgment interest. Those courts hold-

ing to the contrary appear to have found significant the use of the words "limit" and "liability" in the policies before them; we believe they might reach a different conclusion if faced with the words "the amounts due under this coverage," which are at issue in the case before us.

Against this background, we analyze the language of defendant's insurance policy. "The terms of the parties' contract, if unambiguous, clear, and consistent, are accepted in their plain and ordinary sense, and the contract will be enforced to carry out the intention of the parties as it existed at the time the contract was negotiated." *Dodson*, 812 P.2d at 376; *see also United Bank & Trust Co. v. Kansas Bankers Surety Co.*, 901 F.2d 1520, 1522 (10th Cir. 1990). Thus, we must decide whether the policy language at issue is clear and unambiguous.

The policy's "COVERAGE A" contains two relevant parts. The first part obligates State Farm to pay damages resulting from defendant's use of his car and to defend any suit against defendant for damages. The second part provides that *"[i]n addition to the limits of liability"* State Farm will pay certain costs for the insured, specifically court costs, interest on damages, the costs or premiums of certain bonds, and certain expenses of the insured. App. at 133 (emphasis added). The language and overall structure of the two parts makes clear that "the limits of liability" is distinct from the cost items—which include postjudgment interest—all part of "COVERAGE A."

As to interest on damages after a judgment, the policy provides that State Farm can terminate its obligation to pay interest by paying, by offering, or by depositing in court *"the amount due under this coverage."* *Id.* (emphasis added). Clearly, "this coverage" is "COVERAGE A." As noted above, "COVERAGE A" includes the obligation to pay damages *and* to pay the specified cost items including interest after a judgment. Thus, the policy is clear and unambiguous that "the amount due under

this coverage" includes both the amount payable as damages, in this case $50,000, *and* postjudgment interest. We hold that the deposit into court of $50,000 only did not terminate State Farm's contractual obligation to pay postjudgment interest.[4]

Even if we were to find the policy ambiguous, we would reach the same result. The Oklahoma Supreme Court has stated that "[i]nsurance contracts are contracts of adhesion, and where the contract is susceptible of two constructions, the construction most favorable to the insured must be adopted. Standardized or printed contracts are interpreted most strongly against the party preparing the form." *Wilson v. Travelers Ins. Co.*, 605 P.2d 1327, 1329 (Okla.1980). In this case, the insured is benefited by construing the policy to require State Farm to pay, offer or deposit in court all amounts due under the policy before State Farm's obligation for postjudgment interest terminates and that obligation then falls on defendant personally. State Farm could have drafted the policy to provide that its obligation to pay postjudgment interest terminated when it paid, offered or deposited in court "the amount payable as damages." As it was drafted, the policy at a minimum is ambiguous, and in such a case it must be construed in favor of plaintiff and against State Farm.

REVERSED and REMANDED for proceedings consistent herewith.

---

**4.** Our disposition moots the second issue addressed by the parties. Neither the district court's order accepting deposit into court of the $50,000 nor the actual deposit a few days later terminated State Farm's obligation to pay postjudgment interest. Such interest continues to accrue until State Farm pays, offers or deposits in court the entire "amount due under this coverage," which includes the $50,000, court costs, and postjudgment interest.